IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:93cr165-MHT |
| DARRYL RAY NEWTON | ) | (WO) |

## OPINION AND ORDER

The issue before the court is whether defendant Darryl Ray Newton, who previously entered a plea of "not guilty by reason of insanity," should be fully and unconditionally discharged. Newton is currently placed on conditional release. A hearing was held before the court on this issue on January 21, 2011.

### I. BACKGROUND

#### a. Newton's 1993 Plea

Newton pled not guilty only by reason of insanity to the charges of knowingly making false statements in connection with the acquisition of a firearm, 18 U.S.C.

§ 922(a)(6), and possession of a firearm by a person who had been committed to a mental institution, 18 U.S.C. § 922(g)(4). United States v. Newton, 2010 WL 5394761, at *1 (M.D. Ala. 2010) (Thompson, J.). In purchasing a Ruger, Model 10-22 .22 caliber semi-automatic rifle, Newton stated that he had never been adjudicated mentally defective or committed to a mental institution, when, in fact, he had been committed to two mental institutions in 1990. Id. While Newton was originally deemed incompetent to stand trial, the court determined, after a period of Newton's hospitalization and treatment, that he was able to understand the nature and consequences of the proceedings against him and to assist properly in his own defense. Id.

Upon accepting Newton's plea, the court ordered his conditional release under the supervision of the court's Probation Department. Id. The court concluded that Newton had proved that he would not create a substantial risk of bodily injury to another person or serious damage

to the property of another. Id. (citing 18 U.S.C. § 4243(d) & (f)(2)). He was ordered to participate in psychiatric treatment at the Montgomery Area Mental Health Authority (MAMHA) and to participate in ongoing assessment, treatment, and evaluation by a treatment provider until such time as his treatment provider informed the court that he was no longer in need of psychiatric treatment. Id. Newton was directed to abstain from both alcohol and illicit drugs. Id.

b. Newton's Supervision

Since beginning supervision with the United States Probation Office, Newton has been under the care of the MAMHA. Id. He is diagnosed with paranoid schizophrenia and, since 1993, has received both oral medications and injections of Haldol. Id.

In February 2008, while still under the supervision of the Probation Office and receiving treatment at MAMHA, Newton informed his probation officer that his medication

3

had been changed and that he was experiencing negative side effects.  Id.  He said the side effects included hearing voices, and he wanted to be 'locked in a cell and left alone'; he also experienced tingling sensations in his hands and experienced head pain.  Id.  In addition, Newton experienced homicidal thoughts when his local pharmacy did not promptly fill his prescription.  Id.  Newton voluntarily attended a nine-day stabilization program at a crisis intervention center.  Id.

In June 2009, Newton refused MAMHA's treatment recommendations and did not accept certain medications.  Id. at 2.  On July 4, he was arrested for public intoxication.  Id.  He pled guilty in a city court and paid a $ 50 fine and $ 191 in court costs.  Id.  Newton voluntarily admitted himself to a hospital emergency room on July 7, 2009, and was released on July 13, after completing a stabilization program.  Id.  On July 21, he attended his MAMHA appointment and his counselors stated that he appeared in "a functioning state."  Id.  Newton

4

has resumed his medication and is receiving injections of Haldol.  Id.

The Probation Department did not seek any punitive action as a result of Newton's June and July 2009 violations of his supervision.  Id.

In December 2010, the court ordered that it would begin conducting hearings twice a year on whether Newton should be discharged.  Id. at 3.  The court explained: "While it is evident ... that Newton continues to struggle with mental-health difficulties, the time may still come (and, indeed, may have already come) when it is appropriate to eliminate completely the conditions governing his release and to discharge him.  The court, therefore, believes it should conduct periodic hearings on this issue. Indeed, the court believes that, in instances such as this of indefinite supervision, periodic review after a lengthy period of supervision is prudent, if not constitutionally required as a part of due process."  Id. at 2.

At the first scheduled hearing, in January 2011, the parties informed the court that Newton should be discharged.  The court allowed the parties time to submit mental-health documentation in support of this recommendation.  The parties subsequently filed this documentation on February 28, 2011.

## II.  DISCUSSION

As this court wrote in another matter, "There appears to be no specific statutory provision directly addressing the legal standards required for the discharge and the termination of the conditional release of a defendant who has pled not guilty only by reason of insanity, such that all supervision by the court ends." <u>United States v. Johnson</u>, 981 F. Supp. 1443, 1445 (M.D. Ala. 1997) (Thompson, J). Nevertheless, in <u>Johnson</u>, the court found that it may unconditionally release and discharge a person after holding a hearing and determining, based upon clear and convincing evidence, that the person's

mental state is such that unconditional release would not create a substantial risk of bodily injury to another person or serious damage to the property of another.  <u>Id</u>. at 1445-46 (citing 18 U.S.C. § 4243 & 4247(d)).

As stated, the court has received mental-health documentation in support of the parties' recommendation that Newton should be discharged.  Shankar B. Yalamanchili, a medical doctor supervising Newton's case, states that Newton does not present a substantial risk of bodily injury to another person or risk of serous damage to the property of another person as long as he is compliant with his recommended treatment.  Crowell A. Lisenby, a registered nurse practitioner who has treated Newton since 2007, agrees with this assessment.  In addition, Lisenby states that Newton has been fully compliant with his medications since July 2009 and that Newton is fully aware of the repercussions should he stop taking his medications again.  Lisenby also emphasizes

7

that Newton has never presented a physical threat to him and that he is always courteous and respectful.

Based upon this evidence, and pursuant to the provisions of 18 U.S.C. § 4243, the court finds by clear and convincing evidence that the termination of Newton's conditional supervision and his full discharge by the court will not create a substantial risk of bodily injury to another person or serious damage to the property of another.

***

Accordingly, it is ORDERED as follows:

(1) That the conditional release of defendant Darryl Ray Newton, originally imposed by the court on October 21, 1993, is terminated; and

(2) That defendant Newton is released and discharged in full.

DONE, this the 8th day of March, 2011.

                                            /s/ Myron H. Thompson
                                      UNITED STATES DISTRICT JUDGE